**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| |
|---|
| In re: |
| |
| G-I HOLDINGS INC.  f/k/a |
| GAF CORPORATION, et al. |
| |
| |
| Debtors. |
| |

Hon. Stanley R. Chesler
Civ. No. 02-3082


**OPINION**

**CHESLER**, **District Judge**

THIS MATTER comes before the court on the motion of the United States for Partial Summary Judgment (docket item # 154), and the Cross-Motion of Debtors G-I Holdings Inc. and ACI Inc.[1] (collectively, "Debtors") for Partial Summary Judgment (docket item # 172). Debtors separately move on a Conditional Motion for Bifurcated Trial on adequate disclosure (docket item # 173). For the reasons set forth below, the Court will **GRANT** the United States's Motion for Partial Summary Judgment on the adequate disclosure issue, and **DENY** the Debtors' Motion for Partial Summary Judgment, and for a bifurcated trial.

## I.  BACKGROUND

This case arises out of a dispute regarding the proper characterization for tax purposes of a February 1990 transfer of property (the "1990 Transaction") from GAF Chemicals Corporation

---

[1]Debtors G-I Holdings Inc. and ACI Inc. are the successors to the GAF Chemicals Corporation and Alkaril Chemicals, respectively, both of which were subsidiaries of GAF Corporation, the entity whose return is at issue in this case.

("GAF") and Alkaril Chemicals, Inc. to Rhone-Poulenc Surfactants and Specialities, L.P.

("RPSSLP" or the "Partnership").  Debtors contend that the 1990 Transaction was a contribution

of property to a partnership in exchange for an interest therein, and consequently, that the 1990

Transaction qualifies as a nontaxable contribution to the capital of RPSSLP under 26 U.S.C. §

721(a).  The United States, however, asserts that the 1990 Transaction constitutes a taxable

disguised sale of property under 26 U.S.C. § 707(a) and seeks to collect unpaid income tax

liabilities from Debtors.

**1.     <u>The 1990 Transaction</u>**

On February 12, 1990, Debtors transferred the assets of their surfactants business to

RPSSLP, a newly formed partnership.[2]  (US Stmt. Facts ¶ 1.)  Debtors completed this transfer

through the use of two grantor trusts termed Chemical Trusts I and II.  In return, Debtors received

a Class A limited partnership interest, which represented a 49% interest, in RPSSLP, and an

initial capital account valued at $480 million.  (<u>Id.</u> ¶ 2.)  That same day, a Citibank subsidiary,

ESSL-RP, transferred $9.85 million to RPSSLP and received a 1% Class A limited partnership

interest, with an initial capital account of $9.85 million.  (<u>Id.</u>) Thereafter, Chemical Trusts I and

II, along with ESSL-RP, assigned their Class A interests in RPSSLP to CHC Capital Trust.  (<u>Id.</u>

at 3-4.)

CHC Capital Trust, pursuant to a Credit Agreement dated February 12, 1990, borrowed

$459,234,375 from Credit Suisse.  Pursuant to a Pledge, Assignment and Security Agreement,

CHC Capital Trust pledged its Class A interest in RPSSLP as collateral for the Credit Suisse

---

[2]The parties dispute whether RPSSLP was, in fact, a partnership.  Debtors contend that
RPSSLP was a newly formed partnership and that Debtors were partners in RPSSLP, for federal
income tax purposes.  The United States disagrees.

loan.  The CHC Capital Trust Agreement, also dated February 12, 1990, required CHC Capital

Trust to distribute the loan proceeds from Credit Suisse to the Chemicals Trust I Trustee, the

Chemicals Trust II Trustee, and ESSL-RP, in accordance with their percentage interests in CHC

Capital Trust.  Chemicals Trusts I and II collectively owned 97.989% of CHC Capital Trust and,

therefore, received $450,000,000 of the Credit Suisse loan proceeds.  Thereafter, Debtors

received $450,000,000 from Chemicals Trusts I and II  "in exchange for Debtors' surfactants

businesses pursuant to the Asset Sale Agreement dated February 12, 1990."  (Debtors' Response

to Request for Admission ("RFA") No. 290, Gov. Exh. E.)

      a.    <u>Interest Payments on the Credit Suisse Loan</u>

The Credit Suisse Loan was a nonrecourse loan secured only by CHC Capital Trust's

partnership interest in RPSSLP. (Gov. Exh. H, RFA No. 681.)  The loan called for the payment

of monthly interest payments.  Pursuant to the RPSSLP partnership agreement, the Class A

limited partners, Debtors and CHC Capital Trust, were entitled to a "Class A Interest Holders'

Priority Return" of approximately $44.7 million per year, computed at 9.125% of the Class A

limited partners' original capital accounts.  In the event that RPSSLP was unable to cover the

Class A Priority Returns, RPSSLP was nevertheless required to make the monthly scheduled

Class A Priority Return distributions to CHC Capital Trust. (Gov. Exh. B, 7.)

The monthly Class A Priority Return distributions CHC Capital Trust received from

RPSSLP were first used to pay any interest due on the Credit Suisse Loan and to make any

payments required on a February 12, 1990 interest rate swap agreement between Citibank and

CHC Capital Trust.  Any surplus proceeds were then distributed to Debtors.  (Gov. Ex. G at 35-

37.)  When RPSSLP was formed in the 1990 Transaction, the parties intended for the proceeds of

the Class A Priority Returns "plus any cash flows from the Citibank swap would be sufficient to pay the interest due on the Credit Suisse loan and any obligation on the Citibank swap." (Gov. Ex. G, at 18, Debtors' Response to RFA No. 479.)

   b. <u>Repayment of Principal Due on Credit Suisse Loan</u>

  A guaranty agreement dated February 12, 1990, between Rhone-Poulenc S.A. ("RPSA") and Wilmington Trust, and ESSL-RP, RPSA guaranteed all of the financial obligations of RP Specialty, in its capacity as general partner, and all of the financial obligations of RPHI, in its capacity as Class B Limited Partner, under the RPSSLP partnership agreement. Under the RPSSLP partnership agreement, the amount of losses incurred by RPSSLP that could be allocated to Debtors was capped at $26.3 million.

  Debtors' and Citibank's Class A interests in RPSSLP could be liquidated by RPSA buying out 98% of the Class A interests in 1993, at which time the Credit Suisse Loan would be repaid or refinanced. Under the RPSSLP partnership agreement, RPSCI, as general partner, was required to maintain at all times an aggregate fair market value of RPSSLP assets in excess of the aggregate liabilities of RPSSLP. (Gov. Exh. G at 39-40, Debtors' Response to RFA No. 538.) This obligations was unconditionally guaranteed by RPSA. (<u>Id.</u> No. 539.)

## II. DISCUSSION

  GAF Corporation and its Subsidiaries timely filed their 1990 tax return (the "1990 GAF Return") on September 16, 1991. (Gov. Exh. 2, Gov. Response to Debtors' RFA No. 75.) It is undisputed that the IRS filed a notice of deficiency more than three years, but less than six years after this date. This portion of the very long, protracted litigation history in this case seeks to

determine whether the United States is subject to the traditional three-year statute of limitations, or whether it can take advantage of the longer, six-year statute of limitations provided for in 26 U.S.C. § 6501(e)(1)(A).  Section 6501(e)(1)(A) provides:

> (e)     Substantial omission of items.   – Except as otherwise provided in subsection (c)
> (1)     Income taxes. – In the case of any tax imposed by subtitle A –
> (A)     General Rule. – If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

26 U.S.C. § 6501(e)(1)(A).

Presently before the Court are two motions for partial summary judgment.  The United States has moved for partial summary judgment on the issue of whether Debtors adequately disclosed the 1990 Transaction on the 1990 GAF Return.  In response, Debtors have filed a cross-motion for partial summary judgment on statute of limitations grounds.  The Court will address each motion in turn.

## 1.     Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); Kreschollek v. Southern Stevedoring Co., 223

5

F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe

all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v.

Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden

of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986).

The Supreme Court has stated that in evaluating a defendant's motion for summary

judgment:

> [t]he judge must ask . . . not whether . . . the evidence unmistakably favors one side
> or the other but whether a fair-minded jury could return a verdict for the plaintiff on
> the evidence presented.  The mere existence of a scintilla of evidence in support of
> the plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.   The judge's inquiry, therefore, unavoidably
> asks whether reasonable jurors could find by a preponderance of evidence that the
> plaintiff is entitled to a verdict . . . .

Anderson, 477 U.S. at 252.  A fact is "material" only if it will affect the outcome of a lawsuit

under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such

that a reasonable fact finder could return a verdict for the nonmoving party.  See id.

Once the moving party has properly supported its showing of no triable issue of fact and

of an entitlement to judgment as a matter of law, the non-moving party "must do more than

simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at

586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the

pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363

(3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

**2.      United States's Motion for Partial Summary Judgment on the Adequate Disclosure Issue**

In its motion, the United States argues that this Court should grant partial summary judgment in its favor and find that the disclosures made in the 1990 GAF Return did not adequately disclose the facts of the 1990 Transaction.  Again, section 6501(e)(1)(A) gives the Commissioner six years from the date on which a tax return is filed in which to access an income tax liability against a taxpayer that fails to report an amount of gross income exceeding "25 percent of the amount of gross income stated in the return."  26 U.S.C. § 6501(e)(1)(A).  Debtors argue that the IRS's assessment for the 1990 taxable year is time barred because the 25% omission of income test is not met, and because Debtors adequately disclosed the 1990 Transaction under § 6501(e)(1)(A)(ii).

a.      Burden of Proof Under 26 U.S.C. § 6501(e)

The bar of the statute of limitations is an affirmative defense and, as such, the party raising it maintains the burden of proof.  Hoffman v. Commissioner, 119 T.C. 140, 146 (2002). Here, therefore, Debtors must initially show that the IRS did not assess the tax due for the 1990 taxable year within the normal three-year statute of limitations period under § 6501(a).  Hoffman, 119 T.C. at 146.  It is undisputed in this case that the IRS did not assess the tax due for 1990 before the running of the three-year statute of limitations.  Therefore, Debtors have established a *prima facie* case that the three-year limitation period has expired.

Having established a *prima facie* case, the United States has the burden of going forward to establish that Debtors omitted from the 1990 GAF Return "an amount properly includible therein which is in excess of 25% of the amount of gross income stated in the return," within the meaning of § 6501(e)(1)(A).  Hoffman, 119 T.C. at 146.  Once the United States makes this showing, the burden shifts back to Debtors to establish that the 1990 GAF Return disclosed the 1990 Transaction "in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item."  26 U.S.C. § 6501(e)(1)(A)(ii).  "Notwithstanding the shifting of the burden of going forward, the burden of ultimate persuasion never shifts from the party who pleads the bar of the period of limitations."  Hoffman, 119 T.C. at 146-47.

      b.     Adequate Disclosure Standard

Section 6501(e)(1)(A)(ii) provides that:

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

26 U.S.C. § 6501(e)(1)(A)(ii).  The language of section 6501(e)(1)(A)(ii) allows a taxpayer to avoid the extended six-year statute of limitations period by demonstrating that the transaction at issue was adequately disclosed on their relevant tax return.  Setting forth the standard by which the Court should complete this analysis, Debtors rely on the United States Supreme Court case of Colony, Inc. v. Commissioner, which interpreted 26 U.S.C. § 275, the predecessor to section 6501(e)(1)(A).  357 U.S. 28 (1958).  In Colony, the Supreme Court stated:

> We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years [now three] to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors.  In such instances the return on its face provides no clue to the existence of the omitted item.  On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return, the Commissioner is at no such disadvantage.

357 U.S. at 1038.  Since the decision in Colony, several courts have interpreted the above language to require a taxpayer to provide the Commissioner with a mere "clue" of the omitted transaction.  See Univ. Country Club, Inc. v. Commissioner, 64 T.C. 460, 470 (1975) (disclosure deemed to be adequate if "a reasonable followup on such clue would lead to the adjustment that [the Commissioner] ultimately made"); Rhone-Poulenc Surfactants & Specialities, L.P. v. Commissioner, 114 T.C. 533, 557-58.

This Court, however, finds the holding and reasoning of the First Circuit in CC&F Western Operations LP v. Commissioner, 273 F.3d 402 (2001) more in line with the requirement of the statute.  The First Circuit in CC&F stated:

> On its face, the "adequate to apprise the Secretary of the nature and amount" language establishes a much stiffer test than a mere clue, and quite properly the cases tend to interpret it as requiring far more than a mere clue that might intrigue Sherlock Holmes. [citations omitted]   And even if Colony were (wrongfully) read as establishing a clue test, it would be difficult to read the adequate disclosure language as adopting that test since the language was enacted four years before Colony was even decided and does not appear in the statute there at issue (section 275).  The use of the clue language in decisions construing section 6501's adequate disclosure provision likely reflects an impulse to create a sense of continuity (unfortunately false) between Colony and section 6501's adequate disclosure test.

CC&F, 273 F.3d at 407.  The CC&F court noted that it is

> also debatable whether this provision [§6501(e)(1)(A)(ii)] should be read literally, as the IRS argues, to require disclosure of the exact amount omitted or merely requires that there be a clear indication that a large amount of gross income was

omitted, as some cases have held . . . .

Id. at 407.  The court did not decide this question in CC&F, since Western lost on even the more

lenient test.  Id. at 408.  Nevertheless, the CC&F court set forth what appears to this Court to be

the most reasonable and practical approach to applying the adequate disclosure provision of

section 6501.  The court summarized its approach as follows: "In the end, the safe harbor

provision of section 6501 has to be read in light of its purpose, namely, to give the taxpayer the

shorter limitations period where the taxpayer omitted a particular income item from its

calculations but disclosed it in substance."  Id.

Following the reasoning of the CC&F court, this Court will examine the 1990 GAF

Return to determine whether the 1990 Transaction was disclosed in substance.  This standard

does not require Debtors to have disclosed every exact element of the 1990 Transaction viewed

from the United States's perspective or theory of the case.  It does, however, require that the tax

return reveal more than obscure, disconnected marks on a treasure map which the IRS was

expected to decipher at its peril.[3]

c.      Disclosures on GAF's Return[4]

Debtors contend that the disclosures made on the 1990 GAF Return were adequate to

---

[3]For purposes of this motion, the Court accepts Debtors' contention that the standard is that of a reasonable IRS agent.  However, as discussed above, the standard is not whether a reasonable IRS agent would be able to connect a set of apparently unrelated dots to discern the information that Debtors were required to provide.

[4]Debtors contend that the Court must consider the disclosures on the 1990 Partnership Return in determining whether GAF adequately disclosed the 1990 transaction.  The Court will assume, without deciding, for purposes of this motion that the disclosures on the 1990 Partnership Return will be considered.  For the reasons discussed below, however, even considering the 1990 Partnership Return, Debtors' disclosures are still woefully insufficient.

apprise the government of the "nature and amount" of the 1990 Transaction.  To support this

position, Debtors rely on the following disclosures:

- The $450,000,000 Partnership investment was listed on Line 9 of Schedule L under

  "other investments."  The investment is listed on the itemized schedule of GAF

  Chemicals Corporation's "other investments" in Statement 87 as "Surfactant

  Partnership."  (Gov. Exh. A. at IRS 52564.)

- Page 1 of the 1990 GAF Return, Line 18 listed an interest expense in the amount of

  $209,823,780 and a reference to Statement 17, an itemized interest expense schedule,

  which labeled the expense "RP Nonrecourse."  (Gov. Exh. A.)

- Page 1 of the 1990 GAF Return, listed their share of partnership income on Line 10

  "other income" as $34,612,041 and listed $2,523,355 in "interest income" from the

  Partnership on Line 5 of the 1990 GAF Return.

- "Other income" and "interest income"  were listed on the itemized schedules to Lines 10

  and 5;  Statements 9, 10 and 3, respectively.  Statement 9 itemized GAF's "other income"

  and listed $32,693,958 coming from the "Surfactant Partnership."  (Gov. Exh. A, at IRS

  52433.)  Statement 3 itemized "interest income" and listed $2,523,355 of interest income

  from "Surfactant Partnership."  (Id., at IRS 52428.)

- Schedule M-1 of the 1990 GAF Return listed a $2,066,123 adjustment for Alkaril

  Chemicals for taxable income not recorded on Debtors' books which was identified as

  relating to the "Surfactant Partnership" which was identified on the itemized list of Line 4

  adjustments in Statement 142. (Id., at IRS 52635.)

- A $3,522,062 adjustment for GAF Chemicals Corporation for income on Debtors' books

11

not reported on the 1990 GAF Return on Schedule M-1, Line 7 which was separately

itemized on Statement 149 and labeled "Surfactant Partnership Income."  (Id., at IRS

52642.)

The 1990 Partnership Return made additional disclosures including:  (1) the Partnership was

formed on February 12, 1990; (2) the Partnership was in the business of manufacturing

chemicals; (3) a Schedule K-1 which disclosed information regarding Debtors' partnership

interest, including Debtors' percentage interest and the allocation formulas for profits and losses;

and (4) the capital account decreased by $2,260,849.

Debtors' contend that these disclosures satisfy the adequate disclosure test.  Debtors

argue that it is obvious from the face of the 1990 GAF Return that Debtors did not report a

taxable capital gain as a result of their contribution of assets to the Partnership and did not report

taxable income from the proceeds of the nonrecourse loan.  Debtors, therefore, conclude that

their treatment of the 1990 Transaction, a nontaxable contribution of assets, was clear to a

reasonable agent reviewing the 1990 GAF Return.

     d.    The Disclosures Made in Debtors' 1990 GAF Return Did Not Adequately
             Disclose the 1990 Transaction

Debtors argue that the disclosures in the 1990 GAF Return, read in combination with the

1990 Partnership Return, adequately discloses the 1990 Transaction.  Specifically, Debtors

contend that disclosures in the 1990 GAF Return demonstrate that Debtors made a significant

investment in a partnership, had large amounts of flow-through income from the partnership, had

incurred a large amount of nonrecourse indebtedness, and had reported no income from the

partnership contribution or the borrowing.

12

The Court is not convinced that these select disclosures sufficiently identified the 1990
Transaction in substance.  For example, Debtors contends that their listing of "interest expense"
in the amount of $209,823,780 with a reference to "RP Nonrecourse" is sufficient to disclose the
undertaking of a $450,000,000 loan.  However, on Schedule L, where Debtors could have
itemized these long-term debt obligations, they listed only a gross figure of $1,363,744,755 and
made no detailed listing of the debts of G-I Holdings in excess of one billion dollars.  In contrast,
however, they did make such an itemization on Schedule L, Statement 119 for GAF Building
Materials Corporation, listing nine obligations which amount to $23,915,519 in long term debt.
Debtors' failure to itemize a debt total exceeding one billion dollars suggests an effort to
obfuscate the nature of the $450,000,000 loan.

In its motion, the United States contends that the 1990 GAF Return is lacking "clues" to
several key facts of the 1990 Transaction.   Specifically, the 1990 GAF Return contains no
connection between the formation of RPSSLP and the Credit Suisse loan, both of which occurred
simultaneously on February 12, 1990, or that RPSSLP was structured to make fixed monthly
cash distributions to Debtors by way of Class A Priority Returns.  Likewise, the 1990 Return
makes no mention of Debtors' formation of several trusts used in the transaction.

In CC&F, Western, a partnership, made an indirect sale of real estate which was
encumbered by substantial third-party bank debt, via the partnership's sale of interests in twelve
lower-tier partnerships holding direct interests in the real estate at issue.  CC&F, 273 F.3d at 404.
Western, the selling partnership, made the following disclosures:

> The return stated that Western had sold "various partnership interests" on Mary 29,
> 1990 at a "gross sales price" of $27,965,551 and at a "cost or other basis" of
> $31,161,890, for a net loss of $3,196,339.  No explanation of the derivation of these

figures was given.  Western also attached the Schedule K-1s from the twelve subsidiary partnership returns, which taken together stated that Western's allocable share of those partnership's liabilities just prior to the sale totaled $69,959,490.

CC&F, 273 F.3d at 404.  At issue was whether the Commissioner was entitled to the six-year statute of limitations under § 6229(c)(2),[5] because Western failed to include the amount of third-party bank debt discharged in the sale in the "gross sale price."

Western argued that the adequate disclosure exception of § 6501(e)(1)(A)(ii) should be read into § 6229(c)(2), and that the Commissioner was not entitled to a six-year statute of limitations because Western's tax return, including the twelve Schedule K-1s of the subsidiary partnerships, adequately disclosed the disputed real estate sale.  The First Circuit rejected this argument stating that:

> [E]ven if the IRS knew that this large amount of pre-sale debt existed, Western does not explain why the IRS should have assumed that the debt was paid off by [the real estate purchase] incident to its purchase.  Nothing in Western's return indicated the allocation of debt or any other sale terms.  Possibly, some inference supporting such an assumption could be based on the low amount of basis reported on Western's return. . . . But that is not crystal clear to us and Western offers no argument to show the IRS should have made that assumption.

CC&F, 273 F.3d at 408.

Similarly, here, Debtors' $450 million share of the Credit Suisse Loan appears nowhere as a separately itemized entry on the balance sheet in the 1990 GAF Return.  Debtors argue that

---

[5]Section 6229(c)(2) states:

> If any partnership omits from gross income an amount properly includible therein which is in excess of 25 percent of gross income stated in its return, subsection (a) shall be applied by substituting "6 years" for "3 years."

26 U.S.C. § 6229(c)(2).

14

the IRS should have been able to determine the large amount of indebtedness by the size of their reported interest payments, and that their share of the loan was included in the amount of total debt reported.  Surely the interest expense coupled with Debtors' significant amount of indebtedness listed in Schedule L, Statement 118 informed the IRS that Debtors had significant long-term debt.  These disclosures, however, are not adequate to apprise the government that $450,000,000 of that debt (the identical amount of assets contributed to the "Surfactants Partnership" on Schedule L, Statement 87) occurred in concert with the formation of RPSSLP and the "donation" of GAF's surfactant assets.

The crux of the argument by the United States in the instant motion is that Debtors failed to disclose the connection between their $450 million investment of assets into RPSSLP and their receipt of $450 million in proceeds of the Credit Suisse loan in an adequate manner.  This Court agrees.  The Court finds that Debtors failed to make an adequate disclosure of the Credit Suisse loan, or present any significant link to its existence.  See Estate of Whitlock v. Commissioner, 59 T.C. 490, 510 (1972) (inadequate disclosure when $13,653 investment in U.S. property was buried within reported "notes recievable of $47,077.40, accounts receivable of $181,924.88, and investment in common stocks of $257,500").  It is undisputed that the 1990 Transaction was an intricate and complex series of large financial dealings between sophisticated taxpayers.  The chain of inferences relied upon by Debtors is "too thin and doubtful" to establish adequate disclosure.  CC&F, 273 F.3d at 408.

In short, Debtors have not met their burden of demonstrating that there is a contested issue of material fact with regard to the adequacy of their disclosures concerning the substance of the 1990 Transaction.  The taxpayer is only entitled to the shorter limitations period "where the

15

taxpayer omitted a particular income item from its calculations but disclosed it in substance." Id. Here, the taxpayer omitted the item from its calculations and argues that the disconnected dots on its treasure map sufficiently disclosed it in substance.  The Court rejects this position. Accordingly, partial summary judgment on this issue will be granted in favor of the United States.

**3.    Debtors' Cross Motion for Partial Summary Judgment on the Statute of Limitations Issue**

Debtors have cross-moved for partial summary judgment on the statute of limitations issue.  Debtors contend that the six-year statute of limitations provided for in section 6501(e)(1)(A) is not applicable in this case because the United States has not demonstrated that Debtors omitted in excess of 25% of their stated gross income as required by statute. Accordingly, Debtors conclude that the government's assessment of taxes for the year 1990 is barred by the traditional three-year statute of limitations.

Both sides have presented the Court with varying calculations to support their theory of what percentage of income Debtors purportedly omitted.  Debtors contend that under Treasury Regulation § 1.702-1(c)(2), the 25% omission of income calculation of § 6501(e)(1)(A) must consider the partner's share of the gross income reported on the partnership's return.  In opposition, the United States submits that Debtors' figures, and Treasury Regulation § 1.702(c)(2) are applicable if, and only if, the Court concludes that RPSSLP was a partnership, and that Debtors were partners in the partnership.

In support of their calculation theory, Debtors argue that in Rose v. Commissioner, the Tax Court concluded that income reported by an entity later held not to be a partnership was

treated as partnership income for purposes of the 25 percent test.  24 T.C. 755 (1955).  This

Court concludes that whether or not the imputation rules cited by Debtors are applicable depends

in the first instance, on whether or not RPSSLP was a partnership, and whether GAF was a

partner to that partnership.  <u>Rose</u> cannot be read to stand for the proposition that in general,

section 6501 is to be applied in every situation in which a taxpayer purports to be a partner in a

partnership, regardless of whether or not a partnership is found to exist.  Treasury Regulation §

1.702(c)(2) states:

> In determining the applicability of the 6-year period of limitation on assessment and collection provided in section 6501(e) (relating to omission of more than 25 percent of gross income), a partner's gross income includes his distributive share of partnership gross income (as described in section 6501(e)(1)(A)(I).  In this respect, the amount of partnership gross income from which was derived the partner's distributive share of any item of partnership income, gain, loss, deduction, or credit . . . is considered as an amount of gross income stated in the partner's return for the purposes of section 6501(e).

Treas. Reg. § 1.702-1(c)(2).

By its terms this regulation would appear to apply only to partnerships.  That the Tax Court chose

in a unique situation to equitably expand this doctrine to apply to spouses who innocently

reported their income as partners does not support the extraordinary extension that Debtors

contend here.  Rather, <u>Rose</u> is *sui generis*.

      The Court is therefore satisfied that before the calculation of the amount of disclosed

gross income can be made, a trier of fact must necessarily determine whether Debtors  were

partners in the RPSSLP "partnership".  Moreover, assuming that they are found to be partners,

there will have to be a factual determination as to what their allocable percentage in the

partnership is for purposes of determining what percent of gross income is disclosed in the

partnership return.  Accordingly, Debtors' cross-motion for partial summary judgment on the statute of limitations issue is denied.

**4.      Debtors' Conditional Motion for Bifurcated Trial on Adequate Disclosure**

Debtors separately filed an additional motion asking this Court, should it deny their motion for partial summary judgment, to bifurcate trial on the adequate disclosure issue.  The Court having concluded that the 1990 GAF Return did not adequately disclose the 1990 Transaction for the reasons stated above, will grant partial summary judgment on this issue in favor of the United States.  Accordingly, Debtors' motion for bifurcation on this issue becomes moot.

Further, to the extent Debtors' motion seeks bifurcation on the statute of limitations issue more generally, this motion will be denied.  The Court has concluded above that it is premature to determine the issue of whether Debtors omitted 25 percent of gross income until a factual determination has been made regarding the partnership status of RPSSLP, and Debtors' role in that partnership, if any.  A bifurcated trial is inappropriate unless there is a "clear separation of issues" based on "a clear understanding between the court and counsel of the issues involved in each phase and what proof will be required to pass from one phase to the next."  United States Gypsum Co. v. Schiavo Bros., Inc., 668 F.2d 172, 181 (3d Cir. 1981).  The determination of whether RPSSLP was a partnership and whether Debtors  were true partners is integral to this Court's determination on the statute of limitations issue.  Additionally, the extent to which Debtors were partners, if at all, is a core factual issue in the determination of ultimate liability at trial.  In light of the extensive time the parties have spent in discovery and motion practice, all in preparation of a single trial, bifurcation in this instance would be an inefficient use of judicial

resources.  Accordingly, Debtors' motion will be denied.  See <u>THK America Inc. v. NSK Co.,</u> <u>Ltd.</u>, 151 F.R.D. 625, 631 (N.D. Ill. 1993) (denying bifurcation where the parties had expended "enormous . . . expense in terms of manpower, time, and money" in putting a "discovery network in place" aimed at a single trial).

### III.    CONCLUSION

For the foregoing reasons, the Court will:  **GRANT** the United States's Motion for Partial Summary Judgment on the adequate disclosure issue; **DENY** Debtors' Motion for Partial Summary Judgment on the statute of limitations Issue; and **DENY** Debtors' Motion for Bifurcation on the adequate disclosure issue.   An appropriate form of order will follow.

   s/ Stanley R. Chesler   
Stanley R. Chesler, U.S.D.J.

Dated: September 8, 2006